UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK CROUCH,

        Plaintiff,

v.

SCHNECK AND SCHNECK, INC., d/b/a
REVENUE REPORTING SERVICES,
and JASON L. SCHNECKENBERGER,

        Defendants.

_____/

COMPLAINT

**I.**    **Introduction**

1.    This is an action for damages brought against debt collectors for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Regulation of Collection Practices Act ("MRCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq.*

2.    Defendants, along with other entities and individuals to be identified in discovery, are involved in a fraudulent and ongoing scheme whereby they have conspired to use false representations and threats to coerce the payment of money from consumers across the country who allegedly have failed to repay payday loans.  These schemes, operated by defendants as well as many other entities located in and around Buffalo, New York, Atlanta, Georgia and Charlotte, North Carolina, are based on the use of a script, sometimes known as "The Shakedown" or "The Shake," that includes variations of the following:  The caller calls from a blocked number or uses

1

a telephone number with the consumer's area code, pretends to be a local process server, states to the consumer that "charges" have been filed against the consumer for "breach of contract" or "defrauding a financial institution" and represents that the caller is attempting to locate and serve the consumer with a summons and complaint that has been filed in court against the consumer. The caller suggests that the charges might not be pursued if the consumer calls a toll free number in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm).  Usually, the threatening messages are left indiscriminately (and unlawfully) with the consumer's relatives, employer and other third parties, in order to increase the likelihood of a response.  When the consumer responds to the call, the collector (often posing as an attorney or paralegal) accuses the consumer of misdeed, makes false threats of pending litigation (and sometimes prosecution), and demands payment of the alleged debt.  Of course, no lawsuit has been filed.  Often times the debt is time-barred. Often times, the consumer's personal, financial and account information will have been stolen and will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account.  Often times, the loan has been repaid and there is no debt owed.  When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3.	The use of these unlawful debt collection practices is epidemic.  See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt

collection entities defendants.  See also the complaint filed by the United States of America against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and violated the FDCPA and other laws, through a payday loan collection scheme that is indistinguishable from the ongoing scheme being perpetrated by the defendants a alleged in this complaint.  The United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of virtually every state, and the Better Business Bureau all have issued press releases that warn consumers about this ongoing scam.

## II.  Jurisdiction

4.  This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331.  This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367.   Venue in this judicial district is proper because the pertinent events took place here.

## III.  Parties

5.  Plaintiff Mark Crouch is an adult, natural person residing in Kent County, Michigan.  Mr. Crouch is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Mr. Crouch is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

6.  Defendant Schneck and Schneck, Inc. ("S&S") is an active New York corporation, purportedly doing business at 21 Princeton Place, Orchard Park, New York 14127-

3

1418.  S&S also does business as Revenue Reporting Services.  The registered agent for S&S is Spiegel & Utrera, P.A., P.C., 1 Maiden Lane, 5th Floor, New York, New York 10038.  S&S uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  S&S regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  S&S is a "debt collector" as the term is defined and used in the FDCPA.  S&S is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, S&S is a "collection agency" and "licensee" as the terms are defined and used in MOC.

7.     During all times pertinent hereto, S&S directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Crouch that are described in this complaint.

8.     S&S maintains an internet website, www.revenuereportingservices.com, which was registered by defendant Jason L. Schneckenberger on September 1, 2008.  The website states that the S&S "Mission Statement" is to "recover 100% of the lost revenue of our clients through all legal means necessary to recovery lost funds."  S&S purports to be doing business at 3221 Southwestern Blvd., Suite 236, Orchard Park, New York 14127, but the address is merely a private mailbox rented by defendants at The UPS Store #5286.

9.     S&S uses multiple telephone numbers in connection with its debt collection efforts, including: 866-894-9913, 888-732-2853, 888-312-8602, 716-712-5000 (fax), 716-972-1550 and 716-972-1590.  The Responsible Organization for the toll free telephone numbers used by S&S is FlowRoute, LLC.

10.    On November 16, 2009, a filing statement (No. 200911168387711) was filed with the New York Secretary of State, naming S&S as debtor and Steven Charles Schneckenberger as

the secured party, and giving notice of a security interest in collateral described as "equipment, computer equipment, assets, fixtures, accounts receivable, inventory." Steven Charles Schneckenberger is the father of defendant Jason L. Schneckenberger.

11.　　The records of the Better Business Bureau of Upstate, New York contain numerous complaints made by consumers against S&S, describing the same unlawful debt collection practices that are alleged by Mr. Penning in this complaint.

12.　　S&S has been sued multiple times in various United States District Courts for allegedly violating the FDCPA in connection with the efforts by S&S to collect alleged debts from consumers.  Many of the complaints describe the same unlawful debt collection practices that are alleged by Mr. Penning in this complaint.  The filed lawsuits include the following:

a)　*Cashion v. Schneck & Schneck, Inc. et al.*, 1:2011-cv-0483 (codce)

b)　*Fox. v. Revenue Reporting Services*, 2:2009-cv-5122 (paedce)

c)　*Kaminski v. Revenue Reporting Services*, 3:2009-cv-2203 (pamdce)

d)　*Collins v. Revenue Reporting Services*, 3:2010-cv-5485 (wawdce)

e)　*Bealor v. Revenue Reporting Services*, 3:2013-cv-0026 (inndce)

f)　*Milledge v. Revenue Reporting Services*, 1:2013-cv-0989 (ohndce)

g)　*Chavez v. Revenue Reporting Services*, 4:2013-cv-2904 (txsdce)

Typically, S&S and Mr. Schneckenberger have made the business decision to ignore lawsuits filed against the, allow defaults and default judgments to enter, flout the law, and continue to collect debts using the same unlawful debt collection practices that are described in this complaint.

13.　　Defendant Jason L. Schneckenberger, also known as Jason L. Schneckenberger

Sr., is an adult, natural person, age 34, purportedly residing at 99 Rolling Hills Drive, Buffalo, New York 14224-4109.  Mr. Schneckenberger's email address is schneckjl@aol.com.  Mr. Schneckenberger uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Mr. Schneckenberger regularly collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be owed or due another.  Mr. Schneckenberger is a "debt collector" as the term is defined and used in the FDCPA.  Mr. Schneckenberger is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Schneckenberger is a "collection agency" and "licensee" as the terms are defined and used in MOC.

14.     During all times pertinent hereto, Mr. Schneckenberger (a) created the collection policies and procedures used by S&S and its employees and/or agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of S&S, (c) oversaw the application of the collection policies and procedures used by S&S and its employees and/or agents, (d) drafted, created, approved and ratified the tactics and scripts used by S&S and its employees and/or agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Crouch as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by S&S and its employees and/or agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by S&S and its employees and/or agents in attempts to collect an alleged debt from Mr. Crouch as alleged in this complaint.

15.     During all times pertinent hereto, Mr. Schneckenberger directly and indirectly

participated in the unlawful debt collection practices to collect an alleged debt from Mr. Crouch that are described in this complaint.

16.     During all times pertinent hereto, Mr. Schneckenberger oversaw, directed, managed and supervised the unlawful debt collection practices that were used by defendants to collect an alleged debt from Mr. Crouch as described in this complaint.

17.     Mr. Schneckenberger previously owned, managed and operated an entity named Bankruptcy Asset Acquisition Group, LLC, through which he collected consumer debts. According to the State of Florida, the company was administratively dissolved for failure to file its annual report.

18.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.    Facts

19.    On March 5, 2012, plaintiff Mark Crouch allegedly borrowed approximately

$300.00 from an internet payday lender named Loan Point USA ("Loan Point").  Mr. Crouch

used any borrowed funds for personal, family and household purposes.  Any resulting obligation

of Mr. Crouch to pay money was a "debt" as the term is defined and used in the FDCPA,

MRCPA and MCPA.

20.    Mr. Crouch allegedly failed to repay the debt.

21.    Loan Point charged off the account and related, alleged debt.

22.    Loan Point sold the account and related, alleged debt to an unknown entity.

23.    An entity claiming to have purchased the account and related, alleged debt placed

the account with defendants for collection.  Alternatively, defendants purchased the account and

related, alleged debt.

24.    On April 21, 2015, defendants' employee and agent placed a call to Mr. Crouch's

wife's cellular telephone and left a recorded message on Mr. Crouch's wife's cellular telephone

voice mail, representing that a claim was being filed against Mr. Crouch for an undisclosed

matter and instructing Mr. Crouch to place a return call to telephone number 888-732-2853.

25.    On April 21, 2015, Mr. Crouch placed a return call to telephone number 888-732-

2853 and spoke with defendants' employee and agent.  In the ensuing conversation, defendants'

employee and agent stated that defendants were attempting to collect money allegedly owed by

Mr. Crouch in connection with a payday loan.  Mr. Crouch stated that he was at his place of

employment and could not discuss the matter at that time.  Mr. Crouch terminated the call.

26.    On April 21, 2015, defendants' employee and agent placed a call to Mr. Crouch's

cellular telephone and left the following recorded message on Mr. Crouch's cellular telephone voice mail: "Hey, Mr. Crouch, it's Miss Saluzzo. I was just speaking to you about the claim. If you call me back in ten minutes, Mr. Crouch, I can go ahead and explain to you what's going on. If not, like he said, it was just a courtesy call to you before moving forward to file it. I can hear back from either yourself or your legal representative. My phone number is 888-732-2853. Thank you."

27.     On April 22, 2015, Mr. Crouch placed a return call to telephone number 888-732-2853 and spoke with defendants' employee and agent who identified herself as "Miss Stone." In the ensuing conversation, defendants' employee and agent made the following representations to Mr. Crouch:

(a)     Mr. Crouch borrowed approximately $300.00 from Loan Point USA on March 5, 2012, via the internet.

(b)     Mr. Crouch failed to repay the loan and the current unpaid balance was $580.00.

(c)     Miss Stone was employed by "Revenue Reporting."

(d)     "Our company, Revenue Reporting, has been retained by Loan Point USA. You received a loan from that company that you did not repay."

(e)     "Loan Point has retained our office, which is pre-litigation, to move forward for full recovery."

(f)     "We are on a recorded line."

(g)     "We do have a claim that we are supposed to be filing with Human Resource at your employer, and its stemming from a bounced transaction

9

that occurred a few years ago out of your Community Watch Credit Union bank account."

(h)     "The last three digits of your account number with Loan Point are 248. We are not allowed to provide you with the full account number."

(i)     "Loan Point has retained our office.  We have all legal rights."

(j)     "We will file a claim with your employer Human Resources if you don't resolve this with us."

(k)     "This is the last phone call or communication you will receive before litigation."

(l)     "We can't tell you your full account number because you might make up a fake paid in full letter.  If you pay off the loan, *then* we can tell you the full account number."

(m)     "We don't send you any written information about the debt until after you pay."

(n)     "If you don't pay, we will contact Human Resources at your place of employment, get information about you, and then send your file upstairs to Legal Filings, and it will result in a civil suit, garnishment, lien and judgment against you."

(o)     "We close in twenty minutes.  If you don't make payment arrangements before then, a claim for a civil suit, garnishment, lien, and judgment will be filed with Human Resource at your employer."

(p)     A paid in full letter is the only document you can get from our company.

10

(q)     "This is a pre-litigation office.  We work with a network of attorneys."

(r)     "If you don't pay, they will attach all of the backdated interest and the amount you owe will go from $580.00 to more than $2,000.00."

Miss Stone then transferred Mr. Crouch to another defendants' employee and agent who identified herself as "Laura Saluzzo" at extension 434.  In the ensuing conversation, defendants' employee and agent made the following representations to Mr. Crouch:

(s)     "It will be us to be the ones to file the claim for a civil suit against you. What do you think will happen if this isn't paid?  We're being asked to file it in the form of either a garnishment, lien, or a judgment.  That's what we will be doing.  It's not going to be $580.00 they're coming after, you are going to be held responsible for all the interest as well as the attorney fees and court fees."

(t)     "If you don't pay us voluntarily, we retain an attorney that will go ahead and file the civil suit against you to move forward for a garnishment, lien or judgment.  You will receive the documentation in the mail letting you know that.  Then it will be court ordered, and they will go about it that way."

(u)     "Revenue Reporting retains the attorney."

(v)     "We have no choice but to contact your employer at this time.  That's our job."

(w)     "You're not getting the full account number until the account is paid in full."

28.     The above-described threats and representations made by defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from consumers through the use of false threats, intimidation, and unlawful harassment of the consumers and their relatives and other third parties.  Discovery is expected to disclose that defendants have coerced the payment of millions of dollars from thousands of consumers using the same unlawful tactics that are described in this complaint.

29.     Defendants and their employees and agents in the described communications failed to meaningfully identify themselves and their company.

30.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch that they represented the original creditor of the account.

31.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch that they had the legal right to collect the account.

32.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch that there were legal claims pending against Mr. Crouch.

33.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch that a lawsuit had been filed against Mr. Crouch to collect the alleged debt.

34.     Defendants and their employees and agents in the described communications

falsely represented and falsely implied to Mr. Crouch that a lawsuit would be filed against Mr. Crouch to collect the alleged debt.

35.    Defendants and their employees and agents in the described communications falsely represented to Mr. Crouch the amount of the alleged debt.

36.    Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch that defendants retain lawyers to collect the debts.

37.    Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch that defendants intended to retain lawyers to collect the alleged debt from Mr. Crouch.

38.    Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch that lawyers were involved in defendants' efforts to collect the alleged debt from Mr. Crouch.

39.    Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch that Mr. Crouch was going to be served with a summons and complaint.

40.    Defendants did not intend to file a lawsuit against Mr. Crouch in any Michigan court in efforts to collect the alleged debt.

41.    No defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

42.    Defendants and their employees and agents in the described communications wrongfully threatened to communicate with Mr. Crouch's employer and other third parties unless

13

Mr. Crouch paid money to defendants.

43.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch the identity of the owner of the account and related, alleged debt.

44.     Defendants and their employees and agents in the described communications wrongfully refused to provide Mr. Crouch with the complete and original account number for the account.

45.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch the amount by which the alleged debt would increase if Mr. Crouch refused to pay the alleged debt.

46.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

47.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

48.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

49.     The FDCPA states that it is unlawful for a debt collector to make any false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

50.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. §

14

1692e(2)(A).

51.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

52.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

53.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

54.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

55.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to the payment of the debt.  15 U.S.C. § 1692e(6)(A).

56.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA.  15 U.S.C. § 1692e(6)(B).

57.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. §

1692e(8).

58.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

59.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

60.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

61.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

62.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

63.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

64.     Defendants and their employees and/or agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

65.     The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required

information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

66.     Defendants failed to provide Mr. Crouch with the information it was required to provide by the FDCPA, 15 U.S.C. § 1692g(a) and thereby violated the FDCPA.

67.     Defendants and their employees and agents communicated or threatened to communicate to Mr. Crouch's employer that Mr. Crouch allegedly owed a debt and thereby violated the FDCPA, 15 U.S.C. § 1692b(2) and 15 U.S.C. § 1692c(b).

68.     Defendant and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, yet to be identified in discovery, are engaged in a organized scheme, through which they directly and indirectly conspire to purchase and collect delinquent payday loans, as well as to collect money in connection with accounts they do not own or on which no money is owed, by using the above-described debt collection practices, in violation of the FDCPA (and various state laws, including Michigan law), and that include the use of scripted threats of faked litigation and demands for payments in amounts that exceeded the amount expressly authorized by the agreement creating the debt or permitted by law.   Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, have used the same script and same unlawful tactics, to collect or attempt to collect money from more than one thousand persons.  The enterprise remains active and ongoing.

69.     Each defendant and each defendant's employees, managers, owners, agents, attorneys, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

70.     Defendants and their employees, managers, owners, agents, attorneys, affiliates

and co-conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

71.     The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

72.     Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

73.     As an actual and proximate result of the acts and omissions of defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established by jury and at trial.

V.      **Claims for Relief**

**Count 1 – Fair Debt Collection Practices Act**

74.     Plaintiff incorporates the foregoing paragraphs by reference.

75.     Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)      Defendants violated 15 U.S.C. § 1692b;

b)      Defendants violated 15 U.S.C. § 1692c;

c)      Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural

consequence of which is to harass, oppress, or abuse a person in connection with

the collection of a debt;

d)      Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading

representations and means in connection with the collection or attempted

collection of a debt;

e)      Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means

to collect or attempt to collect a debt from plaintiff; and

f)      Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2– Michigan Regulation of Collection Practices Act

76.      Plaintiff incorporates the foregoing paragraphs by reference.

77.      Each defendant has violated the MRCPA.  Each defendant's violations of the

MRCPA include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a

misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading,

19

untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e)      Defendants violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

g)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 445.257(2);

b)      Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)      Statutory damages pursuant to M.C.L. § 445.257(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 3 – Michigan Occupational Code

78.      Plaintiff incorporates the foregoing paragraphs by reference.

79.     Each defendant has violated the MOC.  Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)      Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

g)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

h)      Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 339.916;

21

b)     Treble the actual damages pursuant to M.C.L. § 339.916;

c)     Statutory damages pursuant to M.C.L. § 339.916;

d)     Equitable relief pursuant to M.C.L. § 339.916; and

e)     Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: May 1, 2015

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com

22